The opinion of the Court was read as drawn up by
Parker C. J.
Nothing perhaps is more difficult, than tc ascertain the real meaning of testators in the disposition o their estates by will, when any restrictions or limitations are intended ; so great a proportion of wills being drawn by persons wholly unacquainted with this intricate branch of juris prudence, and with the technical construction of words which have from time to time been necessarily adopted by courts.
The devise to Lydia Bowers is, tile improvement of the testator’s homestead farm, on condition that she pay to her sister Elizabeth Hartwell three hundred pounds in three annual payments ; and after a minute description of the farm intended to be devised under the word homestead, it concludes with these words, — “ the said premises to be equally divided between all her legal heirs, at her decease.”
It is contended by the tenant’s counsel, that under these words a fee simple estate passed to L. Bowers ; because, in the first place, a devise of the improvement of a farm is a devise of a farm itself, and there being no words necessarily *213 making this a life estate, or in any manner limiting the devise, the subsequent words, c‘ the said premises to be equally divided between all her legal heirs at her decease,” have the same meaning as if the devise had been to her and her heirs for ever.
We cannot adopt this conclusion, because, if such had been the testator’s intention, he would have expressed it in the usual way, which is much more simple and obvious. Without doubt, if the devise had been, the improvement &c. to L. Bowers and her heirs for ever, a fee would have passed, as, in the case cited from 9 Mass. R. 373, a devise of the income for life, was held equivalent to a devise of the land itself; but still the question is, what estate was intended to be devised, and that intention is to be gathered from the whole tenor of the devise. The use of the word improvement may have a considerable tendency to show that a fee simple was not intended to be given. And we think it pretty certain, from the concluding clause in the devise, to wit, that the premises are to he divided between all. the devisee’s legal heirs at her decease, that the testator did not intend that his daughter should have the power of alienation, but that she should enjoy the estate during her life, and that at her decease it should go to the use of her descendants.
Nor does the charge upon her of £300 to be paid to her sister, satisfy us that a fee simple was intended to be given. No doubt such a charge will have that effect upon a devise in which there is no limitation expressed, and in which there is no clear indication that a life estate only was intended. It is to be considered, that it is the intention of the testator that is sought for by the courts, so that where that is manifest in the will itself, there is no room for construction. Thus it one devise to A a messuage for and during his natural life, he paying to B a hundred pounds, the devisee can take only a life estate, and he may accept or refuse it at his pleasure. So in all cases where the intention to create an estate for life is deducible from the expressions in the will, the estate cannot be enlarged by construction, although it be burdened with payments or duties. Moor v. Denn, 2 Bos. & Pul. 247, 5 T. R. 558, and 1 Bos. & Pul. 558. Now by the *214 word improvement the testator intended the use of his estate by Ms daughter, that being the usual word to denote an occupation and enjoyment of rents and profits, distinct from the power of alienation ; and when we recur to the words at the close of the devise, we cannot entertain a doubt that the testator intended that the estate should be kept entire by his widow, in order that at her decease it might come into the occupation of her children or grandchildren, as the case might be. And yet by the rule laid down in Shelley’s case, which is now an undisputed rule of the common law, however manifest may be that intention of the testator to give only a life estate to his daughter, if by the same instrument he devises the remainder to her heirs generally after her decease, the daughter shall take a fee and not a life estate, that is, her heirs shall take by descent and not by purchase, the whole estate being in her, so that she can alienate it or devise it at pleasure ; for although the testator intended to deprive her of the power of alienation, yet as it was clearly his intention to vest the whole estate in her and her heirs, the policy of the law will prohibit this restriction upon the right of alienation. Fearne, c. 4; Perrin v. Blake, Hargrave’s Tracts, 551. But it is upon the supposition that the devise to the heirs is to them generally, and not to such as may be her heirs at the time of her decease, that the rule in Shelley’s case, if now in force here, would apply ; for in the latter case, the remainder would be contingent, and then Lydia Bowers, the daughter of the testator, would take only a life estate, with remainder to such persons as should be her heirs at the time of her decease. But the law favors vested, rather than contingent remainders, and we are of opinion, for reasons presently to be given, that it was not the intention of the testator, as expressed in this will, to postpone the vesting of the remainder until the termination of the life estate, for the benefit of unborn and unknown heirs, to the prejudice of the lineal descendants of his daughter, then in being, who were without doubt the principal objects of his regard and bounty. And there are several very strong cases, in which it has been determined, that where an estate for life has been given by express words in a will, and after the decease of the *215 tenant for life, the same land is devised to' the issue of the tenant for life, an inheritable estate is vested in the tenant for life, and this even where there is a remainder over in case of failure of issue. Doe v. Applin, 4 T. R. 82 ; also Derm v. Puckey, 5 T. R. 299, in which Lord Kenyon says, nothing can be clearer than that the intention of the devisor was to give only an estate for life to N. Webb, for it is given to him “ for life ” in express words, and “ without impeachment of waste which is applicable only to an estate not of inheritance; and yet this clear intention is made to give way to the more general design of the testator, that the male descendants of Webb should take ; and so an estate tail was held to vest by the devise. And a still stronger case, Robinson v. Robinson, 1 Burr. 38, adopts the same principle; for although by the words of the devise there was given to L. Hicks an estate for life and “no longer,” nevertheless as it appeared that the testator intended his son or sons should at all events take a remainder, this devise was held to constitute an estate tail in L. Hicks. This was decided by the King’s Bench on a case sent from chancery, and the decree of the Lord Chancellor pursuant to it, was affirmed on appeal by the House of Lords.[1]
The principle therefore seems to be clearly settled, that although a testator may evidently have intended to give only a life estate to his first devisee, yet if it also clearly appears that he intended a remainder, either in fee or in tail, should at all events go to the heirs, sons, or children of the tenant for life, his particular intention shall give way to that which is more general, and the estate under the devise shall be held accordingly.
The case before us is of a nature to be governed by this principle. The testator devised to Lydia Bowers an estate for life in land, which at her death was to be divided equally among all her heirs. This was merely providing for such a distribution as would take place under our laws, if he had by express terms given a fee to his daughter. But he intended, without doubt, to restrain her from alienating it by deed o *216 devise ; this the policy of the law will not allow, but by the principles of the common law the whole estate would vest in Lydia Bowers.
And this would be the state of the case, but for the statute of this commonwealth, of 1791, c. 60, the third section of which enacts, “ that whenever any person shall hereafter, in and by his last will and testament, devise any lands, &c., to any person, for and during the term of such person’s natural life, and after his death, to his children, or heirs, or right heirs in fee, such devise shall be taken and construed to vest an estate for life only in such devisee, and a remainder in fee simple in such children, heirs, or right heirs, any law, usage, or custom to the contrary notwithstanding.” [1]
Without doubt, it was the intention of the legislature, by this statute, to abolish the rule in Shelley’s case, which had got to be received as the rule of the common law. It is unfortunate that this intention was not more clearly expressed, for it certainly is not wholly without doubt, whether, in order to come within the operation of this statute, the estate for life should not be created by express terms in the will, and also whether the remainder to the heirs should not be expressly, and not by implication only, a fee simple. We are inclined to think, however, that where by construction of law a life estate is created, and in the same way a remainder to the heirs or children in fee, this statute will operate to prevent the application of the rule in Shelley’s case. Now m the case before us, we think it clear, for reasons above given, that Lydia Bowers could claim only a life estate under the will, and as the testator, in the beginning of the will, signified his intention to dispose of all his estate, we think the devise of the remainder to the heirs of Lydia Bowers at her decease, though without words of limitation to them, gave to them a fee simple estate, especially as there is no devise over after the one to them. It is therefore a case within the statute before cited, so that the estate devised is a life estate in Lydia Bowers, with a remainder over to her heirs.
The question then upon which this cause must turn, is, *217 whether the remainder so devised was contingent, so as not to vest until the death of Lydia Bowers, in which case the demandant would be entitled as one of the heirs then living, or a vested remainder on the death of the testator, in which case Bradley V. Bowers and Lydia M. Bowers, children of Lydia Bowers living at the death of the testator, took the estate subject to the life estate of their mother, and so the several deeds of Lydia Bowers, Bradley V-, and Lydia M, would pass the whole estate in mortgage to the tenant.
We must then inquire in whom the remainder after the life estate should cease, was intended to vest, and whether the testator intended an immediate absolute gift of a remainder to vest at the same time that the daughter came into possession of the life estate, viz. after the death of the testator, or whether he intended that the remainder should depend upon the contingency of her dying leaving heirs : in which latter case, those only who are strictly her heirs at the time of her death would take ; in the former, her son and daughter living at the time of the death of the testator, would be the heirs intended to be provided for by the devise, and perhaps such other children as should be born after the death of the testator, if there should be any such. And this will depend chiefly upon the question, whether the word heirs was used by the testator technically, as a limitation of the estate, or in a popular sense, to designate children. Had the word children, or even the word issue, been used instead of heirs, there would seem to be no difficulty, for notwithstanding the estate is to be divided among them at the decease of their mother, this provision would only indicate that their actual enjoyment of the estate was to be postponed to the death of their mother, not that their title should not immediately vest; as in the case of Ellis v. The Proprietors of Essex Merrimack Bridge, 2 Pick. 243.
The principal objection to this construction of the devise is, that the word heirs is not a word of purchase, like child, children, sons, or issue, according to the maxim, nemo est hceres viventis, and therefore no person can take under that designation while his ancestor is living. No doubt that is the general rule, and perhaps in deeds there would be no excep *218 tian to its operation. But we must not be led into error by maxims which are abstract propositions, when it may be avoided by attending to circumstances which require a modification of the rule founded upon them. More latitude has been observed in giving a construction to the words of wills, than of deeds, and less regard has been paid to the literal expressions used in the one than in the other. It would be wise perhaps to apply the same liberality in the construction of both instruments. It is enough for the present purpose, however, to show that according to settled laws, notwithstanding the maxim, nemo est fyc., the word heirs, when used in a will, ought to be taken as designatio person arum, whenever it is manifest that the testator intended so to use it.
In 6 Cruise’s Dig. 185, the following case is stated as reported in 1 P. Wms. 229. A devised the remainder of all his estate to the heirs male of his aunt E. Long, lawfully begotten, and for default of such issue, the reversion to his own right heirs. At the death of the testator, E. Long was living, and the question was, whether her eldest son could take under the devise ; and it was adjudged that he should take ; that the word heir, signifying, in a general popular sense, heir apparent, should be taken in this sense, to carry into effect the intention of the testator.
The case of Whitney v. Whitney, 14 Mass. R. 88, recognises the same principle, the very general words used in the will being construed to vest a reversion in the children ; and a like case is cited by Mr. Dane, in the 4th vol. 553d p. of his Abridgment (c. 125, art. 7, § 9), from 3 East, 278. So the case in 8 Mass. R. 448, where the devise was to the testator’s wife for life or while she remained his widow, and in case she married, then the property to be divided as the law directs, the children took a vested remainder. The case of Dingley v. Dingley, 5 Mass. R. 535, is of the same character, It is true that the word heirs is not made use of in these Massachusetts cases ; but in some of them the words were quite as remote from application to children as that word would be. "
But in Goodwright v. White, 2 W. Bl. 1010, the very word has undergone the construction we are inclined to give it in *219 the present case. There the devise was to the testator’s son Richard Brooking, his heirs male, and to the heirs of his daughter Margaret White, jointly and equally. Margaret White was living at the time of the devise, and at the death of the testator, and yet it was held, that the son of Margaret took in the lifetime of his mother, the word heirs being a sufficient descriptio personce.
The case of Doe v. Lawson, 3 East, 278, which is the one cited by Mr. Dane, is quite as strong in principle, though the word heirs is not made use of in the devise. There, in the event of the death of the tenant for life, or his marrying cer tain persons, the devise over was to the testator’s nephew for life, and after his decease, to those who should prove themselves next of kin to the testator, according to the statute of distributions ; and it was held, that the next of kin at the time of the testator’s death, and not at the happening of the death or marriage of the tenant for life, were to take.
These cases are enough to show, that although the word heirs is generally not to be construed as a word of purchase, yet that where it manifestly appears that such was the intent of the devisor, it shall have that application.[1]
It has been contended, that the form of the words in the concluding part of this devise shows the intent of the testator, that those who were living at the death of the tenant for life, and could then legally claim as heirs, were the persons to take the remainder ; but we do not think this a necessary inference from the expressions used. “ The said premises to be equally divided between all her legal heirs at her decease,” is more likely to have been intended to fix the time when the children should come into the possession of the estate, than to determine in whom the remainder was to vest at a future time. Had the testator said, to be equally divided among all her children, or sons, or daughters, or issue, at her decease, this form of devise would, according to adjudged cases, have given a vested remainder to such children as should be living when the testator died, with the capacity of opening to let in other children who might be born after his *220 death. Now, considering that in popular language the word heirs is commonly used as synonymous with children, it. is fit to ascribe this meaning to the testator, in a will evidently drawn by some person unskilful in the use of technical language.
It is hardly to be supposed that the testator intended, that if his daughter should die leaving some children alive, and some grandchildren, perhaps several, the issue of a deceased child, the estate should be equally divided among them all; and yet this would be the effect of the devise, if the remainder would not vest until her death ; for the grandchildren would take immediately as heirs to her, without regard to representation, her deceased child not being her heir in the strict technical sense of the word.
The real intent of the testator was, without doubt, to give his daughter a fee simple, but at the same time to restrain her from alienating it; lest it should be passed away from her children. He therefore gives her the improvement, without limiting it to her for her life, and he then declares, that at her decease the premises shall be divided among her legal heirs, meaning that it should be kept for her children, or perhaps her children’s children, intending that the „ equal division should be per stirpes and not per capita. The construction we give to the will sanctions and enforces this intent, without violating any rules of law, for it is according to one of those rules, that in cases of doubt, a vested, rather than a contingent remainder, shall be favored, it being rare that a testator knows the nature of the latter estate or intends to create it.[1]
It follows that the whole estate was in Lydia Bowers and her two children, when they made their deed to the tenant, and that by the death of the daughter her interest devolved upon her mother and brother, so that when the second deed was made the whole interest passed, subject to the defeasance contained in the deed. It is evident however, that by the first deed the interest of Lydia M. Bowers the daughter^ did *221 not pass absolutely, for she being a minor, her conveyance was voidable ; but Bradley V. Bowers her brother and Lydia her mother being her heirs, and having conveyed the whole, they and their heirs are bound by their deed, and the estate mured to Porter by estoppel, when their right accrued.

 See Ram on Wills, 103 to 106, (Law Libr. JVo. 24,^. 103 to 106.)

 See Revised Stat. c. 59, § 9.

 See Adams v. Cruft, 14 Pick. 16.

 See Emerson v. Cutler, 14 Pick. 115; Nash v. Cutler, decided in Suffolk, March T. 1835.